KING & SPALDING LLP
Edward G. Kehoe
Evan C. Ennis
1185 Avenue of the Americas
New York, New York 10036
Tel: (212) 556-2100
Fax: (212) 556-2222
Email: ekehoe@kslaw.com
Email: eennis@kslaw.com

Brian A. White, *pro hac vice forthcoming*
1180 Peachtree St., NE
Suite 1600
Atlanta, GA 30309
Tel: (404) 572-4600
Fax: (404) 572-5100
bwhite@kslaw.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MACQUARIE MÉXICO REAL ESTATE MANAGEMENT S.A. DE C.V. AS ATTORNEY-IN-FACT FOR CIBANCO, S.A. INSTITUCIÓN DE BANCA MÚLTIPLE AS TRUSTEE OF TRUST F/1636,<br><br>       Plaintiff,<br><br>      v.<br><br>HOISTON INTERNATIONAL ENTERPRISES, INC.,<br><br>       Defendant. | Civil Action No.:   1:20-cv-08383<br><br>**COMPLAINT** |

Plaintiff Macquarie México Real Estate Management S.A. de C.V. ("Plaintiff") as attorney-in-fact for CIBanco, S.A. Institutción de Banca Múltiple, as trustee of trust F/1636 (the "Landlord"), by and through its undersigned counsel, for their Complaint against Defendant Hoiston International Enterprises, Inc. ("Defendant"), alleges as follows:

## NATURE OF THE ACTION

1. This is an action for breach of contract and declaratory judgment arising out of Defendant's failure to abide by the terms of a guaranty in favor of the Landlord. The Landlord and Defendant's Mexican parent are parties to a commercial lease agreement for certain property located in Mexico. Defendant delivered a guaranty to the Landlord in which it absolutely and unconditionally guaranteed payment of all amounts due and owing under that lease.

2. The tenant is now in default under the terms of the lease, and Defendant has refused to abide by the terms of the guaranty in that it has failed to pay, and continues to refuse to pay, the Landlord all amounts due and owing pursuant to the lease.

## THE PARTIES

3. Plaintiff Macquarie México Real Estate Management S.A. de C.V., is a *sociedad anonima de capital variable*, also known as a corporation, organized and existing under the laws of Mexico. Its principal place of business is located at Pedregal 24, Floor 21, Col. Molíno de Rey, Del. Miguel Hidalgo, Mexico City, Mexico.

4. The Landlord is a non-business trust, as amended from time to time, by CIBanco, S.A., Institución de Banca Múltiple, as trustee of F/01025 MMREIT Industrial Trust IV, as trustor and beneficiary; and CIBanco, S.A. Institución de Banca Múltiple, as trustee.

5. CIBanco, S.A. Institución de Banca Múltiple, is a commercial banking institution, duly constituted and existing under Mexican law. Its principal place of business is located at Pedregal 24, Floor 21, Col. Molíno de Rey, Del. Miguel Hidalgo, Mexico City, Mexico.

6. Plaintiff Macquarie México Real Estate Management, S.A. de C.V. acts as attorney-in-fact for the Landlord by means of a power of attorney granted though public deed 204,090, dated October 31, 2017.

2

7. Non-party H&H Recursos Internacionales, S. de R.L. de C.V. (the "Tenant") is a *sociedad de responsibilidad limitada de capital variable*, also known as a limited liability variable stock corporation, constituted under the laws of Mexico.

8. Defendant is a corporation organized under the laws of the State of California, with its principal place of business located at 8047 Redwood Avenue, Fontana, California. Defendant is a subsidiary of the Tenant.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction to adjudicate the case pursuant to 28 U.S.C. § 1332(a), because there is complete diversity of citizenship between Plaintiff and Defendant, and the amount in controversy exceeds $75,000 (not including interest and costs).

10. This action is properly brought in this Court pursuant to 28 U.S.C. § 1391 as both parties stipulated in the Guaranty to submit to the exclusive jurisdiction of the federal and state courts sitting in the City of New York, and that venue would be proper in this Court, for any action arising out of, relating to, or based upon the Guaranty. The aggregate value of the Guaranty also exceeds $1 million.

11. Specifically, Section 7 of the Guaranty provides:

Governing Law and Venue. This Guaranty shall be governed and construed in accordance with the laws of the state of New York, United States of America. Each party hereto irrevocably and unconditionally submits to the exclusive jurisdiction of any state or Federal court sitting in the City of New York over any suit, action or proceeding arising out of, relating to, based upon or as a result of this Guaranty or the matters contemplated herby. Each party agrees that service of any process, summons, notice or document by registered mail addressed to it shall be effective service of process for any suit, action or proceeding brought in any such court. Each party irrevocably and unconditionally waives any objection to the laying of venue of any such suit, action or proceeding brought in any such court and any claim that any such suit, action or proceeding has been brought in any inconvenient forum. Each party agrees that a final judgment in any such suit, action or proceeding broach in any such could shall be conclusive and binding and may be enforced in any other courts whose jurisdiction is valid, by suit upon judgment. Each party irrevocably waives trial by jury in any suit, action, proceeding, claim or counterclaim

brought by or on behalf of any party arising out of, relating to, based upon or as a result of this Guaranty or the matters contemplated hereby.

## FACTUAL ALLEGATIONS

**The Tenant's Obligations Under the Lease Agreement**

12. As of December 31, 2018, the Tenant and the Landlord, via Plaintiff as its attorney-in fact, entered into a Lease Agreement (the "Lease") pursuant to which the Tenant agreed to lease from the Landlord a building identified as MXL014 located at Circuito Siglo XXI 2045, Parque Industrial EX XXI in Mexicali, Baja California, México. *See* Exhibit A hereto.

13. As of March 2, 2020, the Tenant and the Landlord, via Plaintiff as its attorney-in-fact, entered into an Explanatory Agreement, which clarified that the leased property subject to the Lease included the land, parking spaces and the building. *See* Exhibit B hereto.

14. Pursuant to Section 1.01(13), the Lease does not expire until March 31, 2022.

15. Pursuant to Section 2.05 of the Lease, the Tenant agreed to pay the Landlord rent in the amount of $16,780.40 per month, as well as a penalty interest charge in the event of a default. Specifically, Section 2.05 provides:

> Rent. Having elapsed 3 (three) months after the Commencement Date, Tenant shall pay Landlord, for the lease of the Leased Property, a monthly rent of $0.35 Dollars per square foot of the Building, that is, a monthly amount of $16,780.40 Dollars (the "Rent") . . . . In the event that Tenant defaults in the timely payment of the Rent pursuant to this Agreement, then Tenant shall pay to Landlord a penalty interest charge equal to 0.5% (zero point five percent) of the total amount of the monthly Rent per each day of default in the payment of the Rent.

16. Pursuant to Section 3.01 of the Lease, the Tenant also agreed to reimburse the Landlord for its pro rata share of other expenses, including taxes and insurance, as well as penalty interest in the event of a default. Specifically, Section 3.01 provides:

> Additional Payments. In addition to the Rent, Tenant shall pay to Landlord, the Tenant's Pro Rata Share of the Taxes, Insurance and POE Charges (as such terms are hereinafter defined) applicable to the Leased Property, plus applicable VAT, as follows (collectively, the "Additional Payments").

**(a) Taxes.**  Taxes shall include any and all taxes, duties or rights, imposed from time to time to the Leased Property by any federal, state or local Mexican authorities, including without limitation, the property tax (*impuesto predial*) of the Leased Property (hereinafter referred to as "Tax" or "Taxes").

**(b) Insurance.**  Insurance shall include, without limitation, all insurance policies in connection with the Leased Property, paid by Landlord but to be reimbursed by Tenant as provided hereunder, including without limitation, any premiums, co-insurances and deductibles (hereinafter referred to as "insurance"). In addition thereto, in the event Tenant's use of the Leased Property shall result in an increase in the premiums for any Landlord's Insurance, Tenant shall pay to Landlord, upon demand, as Additional Payment, an amount equal to such increase in premiums. . . .

**(c) POE.**  Property operating expenses (referred to in this Agreement as "POE") shall mean any and all costs, expenses and obligations applicable to the Leased Property in connection with the operation, ownership, management, and repair of the Building and the Leased Property, including the cost of Landlord's Reimbursable Obligations . . . .

**(d) Payment of Additional Amounts.**  Landlord shall have the right to invoice Tenant monthly, quarterly, or otherwise from time to time, for Tenant's Pro Rata Share of the Taxes, Insurance and POE expenses payable by Tenant under this Agreement plus applicable VAT; and Tenant shall pay to Landlord, as Additional Payments, those amounts for which Tenant is so invoiced within thirty (30) days after receipt of said invoice . . . .

If Tenant defaults in the timely payment of any Additional Payments, then Tenant shall pay to Landlord a penalty interest charge equal to 0.5% of the total amount of each of the Additional Payments, as applicable, per each day of default in any of such Additional Payments.

17.     Pursuant to Section 3.03 of the Lease, the Tenant also agreed to reimburse the Landlord for certain repairs and maintenance, as well as Industrial Park fees.  Specifically, Section 3.03(A)(b) provides:

Landlord's Reimbursable Obligations.  Landlord, at Tenant's cost and expense, will also be responsible for carrying out all non-structural repairs, to the Leased Property or the Building in order to comply with Laws (other than those expressly required herein to be made by Tenant) or that are appropriate to the continued operation of the Leased Property or the Building as provided in this Agreement, and all other documented expenses incurred by Landlord for or on behalf of the Leased Property including maintaining or repairing roof laminate or roof membrane, repairs and maintenance of roof insulation, maintenance of the roof, including ensuring roof water tightness, cleaning and painting of the roof, performance of any annual roof inspection by Landlord's consultant, repairs and maintenance of rain drainage gutters and pipelines of the Building.  Landlord shall also be responsible for exterior painting, as well as for paying all costs, expenses, charges or assessments related to any association to which the Leased Property is subject including

Industrial Park fees, if applicable. All of the above is subject to Tenant's obligation to reimburse Landlord for such work or expense (POE, as hereinfore described).

18. Section 9.01 of the Lease outlines the circumstances that constitute an "Event of Default," including Tenant's failure "to pay any sum when due hereunder and such failure is not cured within the following 30 days of such default."

**Hoiston's Obligations Under the Guaranty**

19. On or about December 31, 2018, Defendant executed and delivered a Lease Guaranty (the "Guaranty") in favor of the Landlord securing the Tenant's obligations under the Lease Agreement. *See* Exhibit C hereto.

20. In Section 2.1 of the Guaranty, Defendant absolutely and unconditionally guaranteed payment, performance and observance of the terms of the Lease. Specifically, Section 2.1 of the Guaranty provides:

> Guaranty. Guarantor absolutely and unconditionally guarantees to Landlord the timely and complete payment, performance and observance of Tenant's terms, conditions, covenants and obligations under the Lease, as the same may be modified, amended, extended or renewed from time to time (collectively, the "Guaranteed Obligations"), including, without limitation, paying rent, charges, fees, sums and expenses when due. This Guaranty is a guaranty of payment and performance, and not collection. This Guaranty is not limited by whether Tenant may be liable individually, jointly with others, primarily or secondarily. Guarantor's obligations are primary, continuing and irrevocable, and independent of the obligations of Tenant or any other guarantor.

21. In Section 3 of the Guaranty, the Defendant waived any requirement that the Landlord proceed against the Tenant before enforcing the Guaranty. Specifically, Section 3 provides:

> Waivers. Guarantor waives: (1) notice of acceptance of this Guaranty; (2) notice of non-performance or non-observance of the Lease; (3) all rights to require Landlord to proceed against Tenant or any other person, or to pursue any remedy or apply any deposit or security; (4) all defenses due to the disability, incapacity or lack of authority of Tenant or any other person; (5) all rights to claim or assert any Tenant defense to the Guaranteed Obligations; (6) all subrogation, contribution and reimbursement rights; (7) all demands and notices relating to payment, presentation, performance or protest, and all other notices of any kind; (8) all rights to assert or plead any statute of limitations relating to this

Guaranty or the Lease; and (9) all rights Guarantor may have due to Landlord's failure to enforce, or delay in enforcing, Landlord's rights.

22. Section 4 of the Guaranty provides that should a default exist, the Landlord may proceed directly against the Defendant without proceeding against the Tenant. Specifically, Section 4 provides:

> Remedies; Cumulative Rights. Should any Guaranteed Obligation default exist, then Landlord may proceed directly against Guarantor without proceeding against Tenant or exhausting any rights or remedies which Landlord may have. Landlord may pursue Landlord's remedies under this Guaranty concurrently with or independent of any proceeding against Tenant or any other person, or under the Lease. Landlord's rights and remedies under this Guaranty are cumulative and in addition to all rights and remedies given to Landlord by law or in equity.

23. And Section 13 outlines the notice required by the Guaranty and specifies that notice by certified mail is sufficient. Specifically, Section 13 provides:

> Notices. All notices required under this Guaranty must be in writing and delivered personally, by courier, by certified mail, postage pre-paid, return receipt requested, or sent by an overnight express courier service that provides written confirmation of delivery to that party at the address set forth in the introductory paragraph of this Guaranty. Notice is deemed given on the earliest of receipt, rejection by the intended recipient, or, for overnight express courier service or certified mail, the 3rd day after deposit.

**Tenant's Breach of the Lease and Defendant's Breach of the Guaranty**

24. Tenant has breached Section 2.05 the Lease by failing to make the required monthly payments for the months of January 2019, June 2019 through October 2019, and December through August 31, 2020, totaling $294,057.57 plus value added tax.

25. Tenant has also breached Sections 3.01(a), (b) and (d) of the Lease by failing to reimburse the Landlord for its pro rata share of insurance in the amount of $1,909.80 plus value added tax and property tax for 2020 in the amount of MXN $49,929.48 plus value added tax.

26. In addition, Tenant has breach Section 3.01(d) of the Lease by failing to pay its pro rata share of property operating expenses ("POE") for the months of January 2019, May 2019,

7

July through October 2019, and December 2019 through August 2020.  POE fees can vary, but the total amount due as of August 31, 2020 is $8,098.62.

27. In addition, Tenant is subject to late fees as set forth in Sections 2.05 and 3.01 of the Lease totaling $240,141.28 as of August 31, 2020 plus value added tax.

28. On March 25, 2020, Plaintiff sent a Demand for Payment on behalf of the Landlord to Defendant providing notice of Tenant's breach of its payment obligations and demanding that Defendant pay the full amount owed by Tenant.  *See* Exhibit D hereto.  Defendant has not responded to the March 25, 2020 Demand for Payment.

29. On June 26, 2020, counsel for Plaintiff sent Defendant a letter on behalf of the Landlord again demanding payment for the amounts owed by the Tenant pursuant to the Lease.  *See* Exhibit E hereto.  Defendant has not responded to the June 26, 2020 demand letter.

30. Tenant remains in default and Defendant has failed to pay the amounts owed by Tenant pursuant to the terms of the Lease Agreement and the Guaranty.  Thus, Landlord, acting through Plaintiff, is entitled to enforce the Guaranty and to collect payment in full from Tenant.

## CLAIMS FOR RELIEF

### COUNT I
### (Breach of Contract)

31. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 30 above as if fully set forth herein.

32. The Guaranty is a binding and enforceable contract between the Landlord and Defendant, the terms of which are set forth above.

33. The Guaranty was provided by Defendant to the Landlord as security for the Tenant's obligations under the Lease Agreement.

34. Defendant absolutely and unconditionally guaranteed to the Landlord the timely and complete payment, performance and observance of Tenant's terms, conditions, covenants and obligations under the Lease Agreement, including paying rent, charges, fees, sums and expenses when due, as well as the Landlord's reasonable costs, expenses and actual reasonable attorneys' fees relating to or arising out of successful litigation to enforce the terms of the Guaranty.

35. The Guaranty expressly binds Defendant to pay as its own debt and on request by the Landlord the sums specified as a result of the Tenant's default.

36. Under the terms of the Guaranty, Defendant also expressly and affirmatively waived, among other things, all rights to require the Landlord to first proceed against Tenant or any other person; all defenses due to the disability, incapacity or lack of authority of the Tenant or any other person; and all rights to claim or assert any Tenant defense to Defendant's obligations under the Guaranty.

37. Tenant has defaulted in its obligation to make all payments due and owing under the terms of the Lease Agreement.

38. Plaintiff, as the Landlord's attorney-in-fact, provided Defendant with a written demand for payment dated March 25, 2020. And a further written demand for payment dated June 26, 2020, was also provided to Defendant. Defendant has failed to respond to either demand letter.

39. To date, Defendant has failed to pay the Landlord the sums required by the Guaranty. Defendant's refusal to comply with the terms of the Guaranty is a material breach thereof.

40. Defendant's breach of the Guaranty has and will continue to cause damage to the Landlord.

## COUNT II
**(Declaratory Judgment as to Defendant's Obligations Under the Guaranty)**

41. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 40 above as if fully set forth herein.

42. The Guaranty is a binding and enforceable contract between the Landlord and Defendant, the terms of which are set forth above.

43. Pursuant to the terms of the Guaranty, Defendant agreed to satisfy the Tenant's obligations to pay all amounts due and owing by Tenant under the terms of the Lease Agreement.

44. Defendant has refused to satisfy its obligation to pay all amounts due and owing by Tenant under the terms of the Lease Agreement.

45. The Lease has not terminated and will not do so until March 31, 2022. Because the Tenant remains in default, it will continue to incur future payment obligations to the Landlord.

46. Therefore, an actual, present, justiciable controversy exists between the parties as to whether the Guaranty requires Defendant to satisfy the Tenant's payment obligations pursuant to the terms of the Lease Agreement.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

a) Ordering Defendant to pay damages in an amount to be determined at trial, with pre- and post-judgment interest thereon;

b) declaring that the Guaranty requires Defendant to satisfy the Tenant's current and future obligations under the Lease Agreement;

c) Awarding Plaintiff all attorney's fees and other costs associated with this action; and

d) Awarding such other relief as the Court deems just and proper.

Dated: New York, New York
       October 7, 2020

**KING & SPALDING LLP**

By:   */s/ Edward G. Kehoe*
      Edward G. Kehoe
      Evan C. Ennis
      1185 Avenue of the Americas
      New York, New York 10036
      Tel: (212) 556-2100
      Fax: (212) 556-2222
      ekehoe@kslaw.com
      eennis@kslaw.com

      Brian A. White
      *pro hac vice forthcoming*
      1180 Peachtree St., NE
      Suite 1600
      Atlanta, GA 30309
      Tel: (404) 572-4600
      Fax: (404) 572-5100
      bwhite@kslaw.com

*Attorneys for Plaintiff*

-