UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------ X
MACQUARIE MÉXICO REAL ESTATE
MANAGEMENT S.A. DE C.V. AS
ATTORNEY-IN-FACE FOR CIBANCO,
S.A. INSTITUCIÓN DE BANCA
MÚLTIPLE AS TRUTEE OF TRUST
F/1636,

                                            **REPORT AND RECOMMENDATION**

                  Plaintiff,

                                            20-CV-8383(JGK)(KNF)

        -against-

HOISTON INTERNATIONAL
ENTERPRISES, INC.,

                  Defendant.
--------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE JOHN G. KOELTL, UNITED STATES DISTRICT JUDGE

      Plaintiff Macquarie México Real Estate Management S.A. de C.V., as attorney-in-fact for CIBanco, S.A. Institución de Banca Múltiple, as trustee of trust F/1636 commenced this action against defendant Hoiston International Enterprises, Inc., seeking a declaratory judgment and damages for breach of contract. The defendant failed to answer or otherwise respond to the complaint. Your Honor granted a judgment by default to the plaintiff and referred the matter to the undersigned to conduct an inquest and to report and recommend the amount of damages, if any, to be awarded against the defendant.

      Before the Court are the plaintiff's inquest submissions, consisting of its proposed findings of facts and conclusions of law, a memorandum of law, and the declaration of its counsel, Edward G. Kehoe ("Kehoe"), accompanied by Exhibit 1, a Lease Guaranty dated December 31, 2018, (the "Guaranty"); Exhibit 2, a Lease Agreement dated December 31, 2018,

("the Lease"); Exhibit 3, a "Demand for Payment under the Lease" dated March 25, 2020; Exhibit 4, a letter from the plaintiff's counsel to the defendant dated June 26, 2020; Exhibit 5, "true and correct copies of invoices sent to the Tenant reflecting amounts owed and not paid"; Exhibit 6, a "true and correct copy of King & Spalding's invoices, including contemporaneous billing records"; Exhibit 7, the declaration of Monica Ardila, "Head of Legal at MMREIT Property Administration, A.C., a member of Fibra Macquarie Group" ("Ardila"); and Exhibit 8, the declaration of Peter Gaul, "Head of Leasing at MMREIT Property Administration, A.C." ("Gaul"). The plaintiff's inquest submissions are unopposed.

## FACTS

The following facts are taken from the complaint filed in this action, Docket Entry No. 1. Plaintiff Macquarie México Real Estate Management S.A. de C.V. is a corporation organized and existing under the laws of Mexico. The plaintiff acts as attorney-in-fact for "a non-business trust, as amended from time to time, by CIBanco, S.A., Institución de Banca Múltiple, as trustee of F/01025 MMREIT Industrial Trust IV, as trustor and beneficiary; and CIBanco, S.A. Institución de Banca Múltiple, as trustee" (the "Landlord") pursuant to a "power of attorney granted through public deed 204,090, dated October 31, 2017." As of December 31, 2018, the Landlord, "via the Plaintiff as its attorney-in-fact," entered into a lease agreement with non-party H&H Recursos Internacionales, S. de R.L. de C.V. (the "Tenant") to lease to the Tenant "a building identified as MXL014 located at Circuito Siglo XXI 2045, Parque Industrial EX XXI in Mexicali, Baja California, México." On March 2, 2020, the Tenant and Landlord entered into an agreement clarifying certain terms of the lease. The lease expires on March 31, 2022.

On December 31, 2018, the defendant entered into an agreement, securing the Tenant's obligations under the terms of the lease. Through that agreement, the Guaranty, the defendant

2

"absolutely and unconditionally guaranteed payment, performance and observance of the terms of the Lease." Further, by the terms of the Guaranty, the defendant "waived any requirement that the Landlord proceed against the Tenant before enforcing the Guaranty," and agreed that should the Tenant default on its obligations under the lease, the Landlord may proceed directly against the defendant.

Under the terms of the lease, the Tenant is obligated to pay rent in the amount of $16,780.40 per month, "as well as a penalty interest charge in the event of a default." The Tenant is also obligated to pay "its pro rata share of other expenses, including taxes and insurance, as well as penalty interest in the event of a default" and is obligated to "reimburse the Landlord for certain repairs and maintenance, as well as Industrial Park fees." The Lease defines the circumstances that constitute an "Event of Default"; among them is the Tenant's "failure to pay any sum when due hereunder and such failure is not cured within the following 30 days of such default."

The Tenant failed to pay its monthly rent for the months of "January 2019, June 2019 through October 2019, and December through August 31, 2020"; the unpaid rent for these months totaled $294,057.57 plus value added tax. The Tenant also failed to pay the Landlord the Tenant's pro rata share of "property operating expenses" for these same months, totaling $8,098.62, as well as its pro rata share of insurance for 2020, in the amount of $1,909.80 plus value added tax, and property taxes for 2020, in the amount of "MXN $49.929.48 plus value added tax." The Tenant is further subject to late fees totaling $240,141.28, which it has not paid. The plaintiff sent two letters to the defendant providing notice of the Tenant's breach of its payment obligations and demanding payment of the full amount owed by the Tenant; these

letters were sent on March 25, 2020, and June 26, 2020. The defendant did not: 1) respond to these letters; or 2) pay the Landlord the amount owed by the Tenant.

## INQUEST SUBMISSIONS

The plaintiff seeks "damages, a declaration of [the defendant's] obligations under the terms of the guaranty, as well as prejudgment interest [, costs], and [the] reasonable attorney's fees" it has incurred in connection with this matter. The text of the Guaranty informs that it will be "governed and construed in accordance with the laws of the state of New York."

The plaintiff contends that the allegations in the complaint are sufficient to state a claim for breach of contract under New York law, because the Landlord and the defendant are parties to a written contract, under which the defendant guaranteed payment of all amounts owed by the Tenant under the terms of the Lease; the Tenant has not made the payments required by the terms of the Lease; and despite receiving notice of the Tenant's failure to pay, the defendant has not made the payments upon which the Tenant defaulted. The plaintiff contends that, under New York law, it is entitled to damages in the amount that would put the plaintiff in the position it would have occupied had the defendant not breached the contract. The plaintiff contends that, as of April 1, 2021, the amounts owed by the Tenant to the Landlord are

> (i) monthly rental payments in the amount of $425,961.43, including [value added tax ("VAT")]; (ii) $4,846.42, including VAT, for Tenant's pro rata share of property taxes for 2020 and 2021; (iii) $3,646.04, including VAT, for Tenant's pro rata share of insurance; (iv) $10,798.17, including VAT, representing Tenant's pro rata share of property operating expenses; and (v) $7,067.30, including VAT, for certain repairs and maintenance. The Tenant is also subject to late fees amounting to $636,664.65, including VAT.

According to the plaintiff, it is entitled to a declaratory judgment that "the Guaranty requires [the defendant] to satisfy the Tenant's current and future obligations to pay all amounts due and owing under the lease," because an actual case or controversy exists between the parties, as the defendant has not satisfied its obligations under the Guaranty and the lease does not

terminate until March 31, 2022.  The plaintiff maintains that it is entitled to receive prejudgment interest, pursuant to New York Civil Practice Law and Rules ("CPLR") § 5001(a), in the amount of $17,126,69.00.  The plaintiff calculates the "pre-judgment interest at a rate of nine per cent per annum starting from March 25, 2020, the date [the defendant] was notified of Tenant's failure to pay the amounts due and owing under the terms of the Lease."

The plaintiff asserts that it is entitled to recover its costs and attorneys' fees in this litigation pursuant to the terms of the Guaranty, and seeks an award of $59,081.50 in attorneys' fees, representing 52.6 hours expended by its counsel and 9 hours expended by a paralegal, as well as $793.34 in costs. The plaintiff maintains that, under New York law, when a contract provides that in the event of litigation the losing party will pay the attorneys' fees of the prevailing party, courts award the amounts expended by the prevailing party if they are not unreasonable.  The plaintiff contends that neither the allocation of time to the matter nor the rates for legal services charged by its counsel are unreasonable for work performed in 2020 and 2021.

## LEGAL STANDARDS

When a defendant defaults in an action by failing to plead or otherwise defend against a complaint, the defendant is deemed to have admitted every well-pleaded allegation of the complaint except those regarding damages.  Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).  The burden is on the plaintiff to prove that it is entitled to the damages it seeks.  See id.  "Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty."  Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citations omitted).  Establishing the appropriate amount of

damages involves two steps: (1) "determining the proper rule for calculating damages on … a claim"; and (2) "assessing plaintiff's evidence supporting the damages to be determined under this rule." Id.  When assessing damages, a court cannot "just accept [the plaintiff's] statement of the damages"; rather, damages must be established "with reasonable certainty." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997).  The Second Circuit Court of Appeals has explained that damages must be established through admissible evidence.  See House v. Kent Worldwide Mach. Works, Inc., 359 Fed. Appx. 206, 207 (2d Cir. 2010) (summary order).

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

> The theory of this provision is that the defending party should be able to decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and money necessary to defend the action. It would be fundamentally unfair to have the complaint lead defendant to believe that only a certain type and dimension of relief was being sought and then, should defendant attempt to limit the scope and size of the potential judgment by not appearing or otherwise defaulting, allow the court to give a different type of relief or a larger damage award.
>
> 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2663 (3d ed. 1998).

"[N]otice that comes at the inquest stage" is not sufficient in itself to satisfy the notice requirement of Rule 54(c) and to "permit a plaintiff in a default action to recover for damages not claimed in the complaint."  Silge v. Merz, 510 F.3d 157, 161 (2d Cir. 2007).

"To state a claim for breach of contract under New York law, 'the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages.'"  Orlander v. Staples, Inc., 802 F.3d 289, 294 (2d Cir. 2015) (quoting Johnson v. Nextel Commc'ns, Inc., 660 F.3d 131, 142 (2d Cir. 2011)).  Under New York law, "[a] party injured by breach of contract is entitled to be placed in the

position it would have occupied had the contract been fulfilled according to its terms." Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 185 (2d Cir. 2007).

New York law allows a prevailing party to recover prejudgment interest "upon a sum awarded because of a breach of performance of a contract." CPLR § 5001(a); see Solow v. Wellner, 86 N.Y.2d 582, 589-90, 635 N.Y.S.2d 132, 135 (1995) (where the action sounds in contract prevailing party is entitled to prejudgment interest upon recovery of a money judgment). "Interest shall be computed from the earliest ascertainable date the cause of action existed." CPLR § 5001(b). "Interest shall be at the rate of nine per centum per annum, except where otherwise provided by statute." CPLR § 5004.

Where "a contract provides that in the event of litigation the losing party will pay the attorneys' fees of the prevailing party, [under New York law,] the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable." F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1263 (2d Cir. 1987). "A variety of factors informs the court's determination of whether a requested amount of attorneys' fees is reasonable or unreasonable, including 'the difficulty of the questions involved; the skill required to handle the problem; the time and labor required; the lawyer's experience, ability and reputation; the customary fee charged by the Bar for similar services; and the amount involved.'" Id. (quoting In re Schaich, 55 A.D.2d 914, 914, 391 N.Y.S.2d 135, 136 (App. Div. 2d Dep't 1977)).

When a prevailing party to a litigation seeks an award of attorneys' fees, it has the burden of providing the court evidence proving that the hourly rate its counsel charged is reasonable, based on "the customary fee charged for similar services by lawyers in the community with like experience and of comparable reputation to those by whom the prevailing party was

7

represented." Gamache v. Steinhaus, 7 A.D.3d 525, 527, 776 N.Y.S.2d 310, 312 (App. Div. 2d Dep't 2004)(citation and quotation marks omitted); see Matakov v. Kel-Tech Constr. Inc., 84 A.D. 3d 677, 678, 924 N.Y.S. 2d 344, 346 (App. Div. 1st Dep't 2011); Friedman v. Miale, 69 A.D.3d 789, 791-92, 892 N.Y.S. 2d 545, 548 (App. Div. 2d Dep't 2010).  To aid the Court in making its determination, "[c]ounsel are, of course, required to present detailed contemporaneous billing records." HSH Nordbank AG New York Branch v. Swerdlow, No. 08 CIV. 6131, 2010 WL 1141145, at *6 (S.D.N.Y. Mar. 24, 2010), aff'd sub nom. HSH Nordbank AG New York Branch v. St., 421 F. App'x 70 (2d Cir. 2011).

   Fixing the amount to be awarded as a reasonable attorney's fee, under a contractual fee-shifting provision, is generally left to the sound discretion of the court. See Haselton Lumber Co. v. Bette & Cring, LLC, 123 A.D.3d 1180, 1183, 998 N.Y.S.2d 491, 494 (App. Div. 3d Dep't 2014)(citation omitted). "A district court's award of attorneys' fees pursuant to a contractual fee-shifting provision must be reasonably related to the fee arrangement that the prevailing party would have made with counsel absent a fee-shifting agreement." In Time Prod., Ltd. v. Toy Biz, Inc., 38 F.3d 660, 667 (2d Cir. 1994).  The lodestar method for calculating a presumptively reasonable attorney's fee: calculating "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983), is not always applied by courts; however, it "remains a useful guide" in contractual fee-shifting cases. Inter-Am. Dev. Bank v. Venti S.A., No. 15 CIV. 4063, 2016 WL 642381, at *2 n.3 (S.D.N.Y. Feb. 17, 2016).

> The Declaratory Judgment Act provides that
>
> [i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. . . . Further necessary or proper relief based on a declaratory judgment or

decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

28 U.S.C. § 2201, § 2202.

In determining whether declaratory relief is warranted, a court should consider whether the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and whether the judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. See Broadview Chemical Corp. v. Loctite Corp., 417 F.2d 998, 1001 (2d Cir. 1969).

## APPLICATION OF LEGAL STANDARDS

The plaintiff has alleged that: 1) while acting as attorney-in-fact for the Landlord, it entered into the guaranty agreement with the defendant; 2) under the terms of that agreement, the defendant guaranteed payment of the Tenant's lease obligations; 3) the defendant failed to satisfy the Tenant's lease obligations upon the Tenant's default; and 4) as a consequence of the defendant's failure to perform under the guaranty agreement, the plaintiff has suffered damages. Through its default, the defendant is deemed to have admitted these allegations. Greyhound Exhibitgroup, Inc., 973 F.2d at 158. The well-pleaded allegations in the complaint are therefore sufficient to establish the defendant's liability for breach of contract.

**Damages**

The plaintiff seeks damages in the amount of $1,088,984.01, consisting of:

(i) monthly rental payments in the amount of $425,961.43, including VAT; (ii) $4,846.42, including VAT, for Tenant's pro rata share of property taxes for 2020 and 2021; (iii) $3,646.04, including VAT, for Tenant's pro rata share of insurance; (iv) $10,798.17, including VAT, representing Tenant's pro rata share of property operating expenses; and (v) $7,067.30, including VAT, for certain repairs and maintenance. The Tenant is also subject to late fees amounting to $636,664.65, including VAT.

As noted above, in connection with its request for damages, the plaintiff has submitted the Lease, "true and correct copies of invoices sent to the Tenant reflecting amounts owed and not paid,"

9

and the declarations of Ardila and Gaul, who together are "authorized to make [their declarations] as . . . attorney-in-fact for, and on behalf of, Plaintiff México Real Estate Management S.A. de C.V." Ardila's declaration includes a chart showing "the amounts owed by Tenant to the Plaintiff, including VAT, . . . in U.S. dollars," which is organized by Invoice Date, Category, and Total for each invoice.

With respect to the rent, Ardila avers that

> 8. Pursuant to Section 2.05 of the Lease, the Tenant agreed to pay the Landlord monthly rent, as well as liquidated damages in the form of heightened interest payments in the event of a default.
> 9. The Tenant's monthly rent was initially set at $16,780.40, plus the applicable value-added tax ("VAT") of $1,342.43.
> 10. Pursuant to Section 2.06 of the Lease, as of one year of the commencement date on December 31, 2018, and annually thereafter, the monthly rent for the Leased Property was to be increased by an amount equal to the greater of (i) the increase of the Consumer Price Index ("CPI") accumulated during the twelve months prior to the date that corresponds to each increase; and 2.5%, without the need of any notice or communication between the Landlord and Tenant.
> 11. Therefore, because the rent increase takes effect on December 31, each December the Tenant's rent reflects 30 days at the old rate and one day at the new rate.

Through its inquest submissions, the plaintiff seeks unpaid rent payments for the months of June 2019 through April 2021; however, with respect to the rent, the complaint alleges that the "Tenant has breached section 2.05 [of] the Lease by failing to make the required monthly payments for the months of January 2019, June 2019 through October 2019, and December [2019] through August 31, 2020, totaling $294,057.59 plus value added tax." The complaint does not speak to any missed monthly rent payments after August 31, 2020. Rule 54(c) of the Federal Rule of Civil Procedure limits an award of damages upon a default judgment to the kind and amount demanded in the pleadings. Therefore, the plaintiff is limited in its recovery of unpaid rent payments to "$294,057.59 plus value added tax," as that is the amount it demanded in the pleadings.

Upon review of the Lease, the invoices sent to the Tenant reflecting monies owed and not paid, and Ardila's declaration, the Court finds that an award of unpaid rent, for the months of June 2019 through October 2019 and December 2019 through August 2020, in the amount of $257,358.81 is warranted.[1]

Ardila avers that

> 12. Purusant [sic] to Section 3.01 of the Lease, the Tenant also agreed to reimburse the Landlord for its pro rata share of other expenses, including taxes, insurance and property operating expenses, as well as liquidated damages in the form of heightened interest payments in the event of a default.
> 13. Pursuant to Section 3.03 of the Lease, the Tenant also agreed to reimburse the Landlord for certain repairs and maintenance, as well as Industrial Park fees.

The complaint seeks insurance payments in the amount of $1,909.80 plus value added tax, property tax "for 2020 in the amount of MXN $49,929.48 plus value added tax," and property operating expenses "for the months of January 2019, May 2019, July through October 2019, and December 2019 through August 2020" in the amount of $8,098,61; therefore, Rule 54(c) limits the plaintiff's recovery to these amounts. Upon review of the Lease, the invoices, and Ardila's declaration, the Court finds that the following awards are warranted: $1,909.80, reflecting the Tenant's unpaid obligation with respect to its share of insurance payments for 2020; $2,423.21, reflecting the Tenant's unpaid obligation with respect to 2020 property taxes; and $7,712.97, reflecting the Tenant's unpaid obligation with respect to its share of property operating expenses. The Court has excluded from its calculations damages related to insurance payments for 2021 and property tax for 2021, as these categories of damages were not requested in the complaint. The Court has also excluded property operating expenses other than those for the months of May 2019, July through October 2019, and December 2019 through August 2020.

---

[1] This amount includes the VAT. The Court has excluded unpaid rent for January 2019 from its calculation, as the plaintiff's inquest submissions do not include evidence that supports that the Tenant did not pay the rent for January 2019.

11

The complaint does not specify that the Tenant breached Section 3.03 of the Lease by failing to reimburse the Landlord for "certain repairs and maintenance," nor does it request damages for this breach; therefore, the plaintiff cannot recover damages for unsatisfied payment obligations pertaining to "roof maintenance."

The plaintiff seeks "late fees amounting to $636,664.65, including VAT." Section 2.05 of the Lease provides, with respect to late fees: "In the event that Tenant defaults in the timely payment of the Rent pursuant to this Agreement, then Tenant shall pay to Landlord a penalty interest charge equal to .5% of the total amount of the monthly Rent per each day of default in the payment of the Rent." Section 3.02 of the Lease provides, with respect to late fees: "If Tenant defaults in the timely payment of any Additional Payments, then Tenant shall pay to Landlord a penalty interest charge equal to .5% of the total amount of each of the Additional Payments, as applicable, per each day of default in any of such Additional Payments."

The chart in Ardila's declaration includes entries for "late fees" in varying amounts ranging from $242.32 to $152,525.08, beginning with $12,668.73 on "8/31/2019." No explanation is provided, and the Court is unable to discern how the late fees reflected on Ardila's chart and in the invoices were calculated, including to what underlying unpaid amounts the late fees correspond. Ardila's declaration states simply that "The Tenant is also subject to late fees, amounting to $636,664.65, including VAT." Based upon the record before it, the Court is unable to determine whether the requested late fees were calculated in accordance with the formulas provided in the Lease. Therefore, the Court cannot conclude that the amount requested for "late fees" has been established to a reasonable certainty and inclusion of the late fees in an award of damages is not warranted.

**Interest**

The plaintiff requests an award of interest pursuant to CPLR §§ 5001 and 5004. "Interest shall be computed from the earliest ascertainable date the cause of action existed." CPLR § 5001(b). The plaintiff requests that interest be awarded from March 25, 2020. This is the date on which the defendant was notified that the Tenant had failed to pay the amounts it owed under the lease. The Court finds that awarding the plaintiff interest at the rate of nine per cent per annum, from March 25, 2020, until the date of judgment, is warranted.

**Attorneys' Fees**

The plaintiff seeks attorneys' fees in the amount of $59,081.50. Section 12 of the Guaranty provides that

> [i]n the event any litigation, or other proceeding (a "Proceeding") is initiated by any party against any other party to enforce this Guaranty, the prevailing party in such Proceeding shall be entitled to recover from the unsuccessful party all costs, expenses, and actual reasonable attorneys' fees relating to or arising out of such Proceeding.

The plaintiff requests fees for the hours expended by its counsel (52.9 hours) and a paralegal (9 hours) "drafting and filing the complaint, drafting and filing the order to show cause seeking a default judgment and the supporting brief and relating papers, and drafting the instant Memorandum of Law in Support of Inquest for Damages and associated papers." In his declaration, Kehoe, Managing Partner of King & Spalding's New York office, explains that "the majority of this work was performed by Evan C. Ennis [("Ennis")], a Senior Associate, who was supervised by myself and Brian A. White [("White")], a partner at the firm. In addition, support was provided by Managing Clerk John C. McCullough [("McCullough")]." Kehoe avers that his hourly rate for 2020 was $1,650, and his hourly rate for 2021 is $1,750. White's hourly rate for 2020 was $1,240, and White's hourly rate for 2021 is $1,325. Ennis's hourly rate for 2020 was $970, and her hourly rate for 2021 is $1,070. McCullough's hourly rate for 2020 was $490, and

13

his hourly rate for 2021 is $520.  The plaintiff has submitted "a true and correct copy of King & Spalding's invoices, including contemporaneous billing records."  <u>See</u> Exhibit 6 to the Kehoe Declaration.

  This is a simple breach of contract case in which the plaintiff sought a judgment by default soon after filing the complaint; the legal issues were not novel or complex.  Upon review of the billing records, the Court concludes that, for the most part, the time King & Spaulding expended upon this action is not unreasonable.  The time entries reflect that the attorneys and paralegal allocated time to the matter that was reasonably required to complete the tasks necessary to prosecute this action.   However, the Court has determined to deduct the 0.7 hours spent by McCullough to "Review certificate of default as to form and advise E. Ennis; electronically file and circulate Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint," as no motion to dismiss the complaint was filed in this action.

  The plaintiff does not provide support demonstrating either that the hourly rates requested are in line with the customary rates charged by the Bar for similar services or that they are in line with the prevailing market rates in this judicial district.  The plaintiff seeks to recover fees for legal services at an hourly billing rate of $1,650 for 2020 and $1,750 for 2021 for Kehoe, who is the Managing Partner of King & Spaulding's New York office with "more than 25 years experience representing clients in the energy, mining, construction, professional services, finance and banking, pharmaceutical, and insurance sectors."  The plaintiff seeks to recover fees for legal services at an hourly billing rate of $1,250 for 2020 and $1,325 for 2021 for White, who is "a partner in King & Spaulding's Business Litigation and International Arbitration practices" with "more than 20 years of experience representing clients in complex litigation matters in courts

14

throughout the United States and before arbitral tribunals throughout the world." The plaintiff makes citation to Vista Outdoor Inc. v. Reeves Fam. Tr., No. 16 CIV. 5766, 2018 WL 3104631, at *6 (S.D.N.Y. May 24, 2018), in which the court approved hourly rates for partners at the law firm Gibson Dunn of $1,170 in 2016 for one partner and $1,165 in 2016, $1,195 in 2017, and $1,260 in 2018 for another partner. The plaintiff also makes citation to U.S. Bank Nat'l Ass'n v. Dexia Real Est. Cap. Markets, No. 12 CIV. 9412, 2016 WL 6996176, at *8 (S.D.N.Y. Nov. 30, 2016), in which the court approved rates for legal services ranging from $250 per hour to $1,055 per hour and noted that "partner billing rates in excess of $1,000 an hour[ ] are by now not uncommon in the context of complex commercial litigation." Id (citation omitted).  However, the requested rates, particularly Kehoe's, are far in excess of $1,000, and given that the instant case is relatively straightforward and cannot be characterized as "complex commercial litigation," the cases relied upon by the plaintiff do not support the hourly rates requested. Considering the case law cited by the plaintiff and Kehoe and White's experience and abilities, the Court finds the following hourly rates to be reasonable: $1,300 for Kehoe and $1,250 for White.

The plaintiff seeks to recover fees for legal services at an hourly billing rate of $970 in 2020 and $1,070 in 2021 for Ennis.  Ennis is a senior associate who "has been practicing for more than ten years . . . representing clients in an assortment of complex commercial litigation matters, including contract and securities cases."  The plaintiff relies on MSC Mediterranean Shipping Co. Holding S.A. v. Forsyth Kownacki LLC, No. 16 CIV. 8103, 2017 WL 1194372, at *3 (S.D.N.Y. Mar. 30, 2017), in which the court approved hourly rates of $569.02 to $753.42 for work performed by associates in 2016 and 2017.  The Court appreciates that reasonable hourly rates for legal services may have increased since 2017; however, the case relied upon by the

15

plaintiff cannot support the rates requested.  Considering the case cited by the plaintiff and Ennis's experience and abilities, the Court finds $800 to be a reasonable hourly rate for the legal services rendered by Ennis.

The plaintiff seeks to recover fees at an hourly billing rate of $490 in 2020 and $520 in 2021 for the services rendered by McCullough.  McCullough is "the Managing Clerk of King & Spalding's New York office and has more than 43 years of experience, including 34 years as a managing clerk"; the plaintiff seeks to recover fees for the services he rendered as a paralegal. The plaintiff makes citation to Microban Prod. Co. v. Iskin Inc., No. 14CV05980, 2016 WL 4411349, at *13 (S.D.N.Y. Feb. 23, 2016), report and recommendation adopted, No. 14-CV-05980, 2016 WL 4411414 (S.D.N.Y. Aug. 18, 2016), in which the court found an hourly rate of $200 for a managing clerk's work to be reasonable. The requested rates exceed the hourly rates found reasonable for legal support staff in this judicial district. See, e. g., City of Westland Police & Fire Ret. Sys. v. MetLife, Inc., No. 12-CV-0256, 2021 WL 2453972, at *3 (S.D.N.Y. June 15, 2021) ("[C]ourts in this district typically cap [paralegals'] hourly rates at $150 to $200 per hour.")  Accordingly, the Court finds $200 to be a reasonable hourly rate for McCullough's work.

Therefore, the Court finds that an award of attorneys' fees of $46,180 is warranted.[2]

**Costs**

The plaintiff requests an award of costs in the amount of $793.34, consisting of expenses incurred for filing the summons and complaint, effecting service, photocopying, and shipping. "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than

---

[2] This amount reflects 2 hours of work by Kehoe at $1,300 per hour, totaling $2,600; 3.2 hours of work by White at $1,250 per hour, totaling $4,000; 47.4 hours of work by Ennis at $800 per hour, totaling $37,920; and 8.3 hours of work by McCullough at $200 per hour, totaling $1,660.

attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54.  The Court finds that an award of costs of $793.34 is warranted.

**Declaratory Judgment**

The plaintiff seeks declaratory relief, namely, that the Court issue "a judgment declaring that the Guaranty requires Hoiston to satisfy the Tenant's current and future obligations to pay all amounts due and owing under the Lease."

 In the instant case, the Lease does not terminate until March 31, 2022.  The Court finds that declaratory relief is warranted, to settle the rights and obligations of the parties with respect to the lease through the remainder of its term.  See Broadview, 417 F.2d at 1001.

## RECOMMENDATION

For the foregoing reasons, I recommend that the plaintiff be awarded: 1) damages in the amount of $269,404.79, and interest on that amount at the rate of nine per cent per annum, from March 25, 2020, until the date of judgment; (2) attorneys' fees in the amount of $46,180; and (3) costs in the amount of $793.34.  I also recommend a declaratory judgment be issued that the Guaranty requires the defendant to satisfy the Tenant's current and future obligations to pay all amounts due and owing under the Lease.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Any requests for an extension of time for filing objections must be directed to Judge Koeltl.  ***Failure to file objections within fourteen (14) days will result in a waiver of objections and will preclude appellate review***.  See Thomas v. Arn,

474 U.S. 140, 106 S. Ct. 466 (1985); <u>Cephas v. Nash</u>, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York          Respectfully submitted,
       October 1, 2021

                                                    */s/ Kevin Nathaniel Fox*
                                                KEVIN NATHANIEL FOX
                                                UNITED STATES MAGISTRATE JUDGE